OPINION OF THE COURT
Daniel R. Palmieri, J.
This petition made pursuant to CPLR 5225 and CPLR 5227 for a turnover of certain assets of the judgment debtor held by respondents is granted to the extent set forth in this decision, order and judgment.
This is one of several proceedings to enforce a judgment held by the petitioner against debtor M.S. The judgment is stated to be in the amount of $1,567,915.80. A second judgment is referenced in the amount of $280,997.04 (originally held by an individual nonparty, whose judgment was assigned to petitioner), but this was stated by petitioner’s attorney in a related *426 proceeding to have been satisfied, and thus will not be considered here.[1]
At issue in the present proceeding are funds in the debtor’s name in two accounts, a Morgan Stanley account opened in September 2008 as a “Traditional IRA,” and another Morgan Stanley account opened in August 2012 as a subaccount under a 40 IK plan for the debtor’s solely-owned business, MS Advisory Services, Inc. It is undisputed that each is a “retirement account” under CPLR 5205 (c), and thus each is exempt from satisfaction of petitioner’s judgment to the extent permitted by that statute and decisional law. It is the extent of that protection that is at issue on this proceeding.
In relevant part, the statute provides as follows:
“1. Except as provided in paragraphs four and five of this subdivision, all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.
“2. For purposes of this subdivision, all [accounts] . . . qualified as an individual retirement account ... or other plan . . . qualified under section 401 of the United States Internal Revenue Code . . . shall be considered a trust. . .
“5. Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be fraudulent conveyances under article ten of the debtor and creditor law.” (CPLR 5205 [c].)
The petitioner argues that these accounts were fraudulently created for the express purpose of defrauding creditors, or, alternatively, that any additions made to such accounts after the paragraph (5) (i) period began are nonexempt and must be turned over to it. Although the petitioner initially argues that the period began in 2004 based upon a 2005 action, the record reveals that this action was settled and another was later commenced based upon the debtor’s default in payment on a note *427 given to petitioner that was central to that settlement. Another action was begun on May 20, 2011 based on the default, and it is clear from the record that it was this 2011 action that led to the subject judgment; it constituted “the interposition of the claim on which such judgment was entered.” (CPLR 5205 [c] [5] [i].) Accordingly, the court finds that the period began the day after 90 days before the commencement of this action, February 20, 2011. The court agrees with petitioner to the extent that it seeks a turnover of additions to these accounts made on or after February 20, 2011, in partial satisfaction of its judgment.
The court cannot accept the debtor’s argument that the CPLR 5205 (d) 90% income exemption continues to apply to deposits into these accounts, as the relevant paragraph refers solely to “additions” without further elaboration or exception. Unless the additional deposit is a rollover from another protected account, which remains exempt (Bayerische Hypound Vereinsbank AG v DeGiorgio, 74 AD3d 492, 493 [1st Dept 2010]), the source is irrelevant once the nonexempt period established in the statute comes into play. No persuasive authority is presented in support of his contention that the court should look to income exemptions before finding an additional deposit into a retirement account available to a creditor, and the Appellate Division in Bayerische described such additional deposits in the simple fashion evident in the statutory language of subdivision (c). “[A]ssets that defendant rolled over into his new IRA account could not have included monies from nonexempt sources, e.g., salary, deposited into the employee retirement account within such 90-day period” {id. [emphasis supplied]). Without addressing each case cited by the debtor, suffice it to say that the key ones upon which he relies are older decisions that are contrary to the clear language of CPLR 5205 (c) (5) (i). (Cf. Pauk v Pauk, 232 AD2d 392 [2d Dept 1996].)
The debtor’s argument also appears contrary to the intendment of subdivision (d) of CPLR 5205, which is designed to protect continuation of income sufficient to support the debtor and his dependents, as opposed to savings for perceived future needs. Further, even the 90% general income exemption can be attacked by a creditor, who may ask a court to find that the debtor does not need the entire 90% “for the reasonable requirements of the judgment debtor and his dependents.” (CPLR 5205 [d] [1].) The income exemption thus is clearly directed to *428 current expenses, and deposits into a retirement account, by their nature, are not to be used for those expenses. Those deposits therefore are not exempt under the statute after the nonexempt period begins.
Nor can the court accept the debtor’s related contention that this proceeding is merely an attempt to circumvent the prior order, as the judgment creditor is not limited to an income execution, but may employ other devices set forth in CPLR article 52. The enforcement sought by petitioner and resolved in the prior order was not directed to the retirement accounts that are the subject of the instant proceeding.
However, the court cannot agree with the petitioner that all sums in the accounts were placed there in fraud of creditors. It has argued strenuously that there are hundreds of thousands of dollars in unaccounted-for income that was realized by the debtor, but this undermines petitioner’s case that the deposits into these accounts rendered him insolvent, which is necessary to demonstrate a fraud on creditors without having to show actual intent to defraud. (Debtor and Creditor Law § 273.) The court also does not have sufficient evidence that the actual intent of the debtor in making all deposits into these two accounts was not to set aside income for use during retirement, but rather “to hinder, delay, or defraud” creditors. (Debtor and Creditor Law § 276.) For example, petitioner itself states that approximately $5,780 was transferred from an existing retirement account to the smaller of the two accounts at issue here, which sum, at least facially, would remain exempt (see Memmo v Perez, 63 AD3d 472 [1st Dept 2009]; Bayerische Hypo-und Vereinsbank AG v DeGiorgio), and this account itself was a subaccount of an existing 40 IK account, whose date of creation is unstated. Further, as the court must look to the claim interposed in May 2011 as the motivation for any fraudulent actions taken by the debtor, the act of opening the other retirement account in 2008 cannot serve as basis for a finding of actual intent to defraud.
However, the court does find that petitioner has shown a fraud in law pursuant to Debtor and Creditor Law § 273-a, which renders transfers by a defendant in an action for a money judgment a fraud against the plaintiff in that action, without regard to intent, if the defendant does not satisfy the judgment. As the petitioner here is the plaintiff, the debtor the defendant, and the judgment has not been satisfied, the transfers made into these accounts satisfy that section. The *429 court therefore finds that all transfers into these accounts made after the action began in May 2011 are fraudulent in law as against the petitioner. However, those transfers also would fall within the ambit of “additions” and thus do not provide a basis for any additional action by the court beyond what is directed here.
Accordingly, a hearing shall be held to determine which of those deposits were “additions” to these two accounts made on or after February 20, 2011, to the date of the hearing. Those additions cannot include any increases in account value, including interest, dividends, or other distributions remaining in the account, if those increases were on exempt property. There is no indication that the appellate courts have considered such increases separately from any initial exempt deposit in holding that this property retains its exempt character. By parity of reasoning, any increase in account value of nonexempt property also would be nonexempt, and available to a creditor.
Petitioner contends that as of June 3, 2014 nonexempt deposits in the amount of $130,500 were made into the 401K subaccount, and that as of April 1, 2013 $17,780.18 in nonexempt deposits were made into the Traditional IRA.[2] All additions, with any increase in value realized from such additions, will have to be turned over, unless, as indicated above, they are actually deposits rolled over from other qualified retirement accounts. (CPLR 5205 [c] [2]; Bayerische Hypo-und Vereinsbank AG v DeGiorgio.) Upon the result of the hearing, the petitioner may apply to the hearing court or to the undersigned for a turnover order in the amount found to be nonexempt. If it is necessary for Morgan Stanley to liquidate any holdings in the subject accounts in order to turn over to the creditor the value of the accounts in cash, to the extent directed under this decision, order and judgment and by the hearing court, it shall do so. The court expresses no opinion regarding any tax consequences that may flow from such a turnover.
The court has considered the other contentions raised by the parties, and finds them either to be without merit, or irrelevant to the present matter.

. Matter of Breslin Realty Dev. Corp. v Smith & De Groat, Inc., 2015 NY Slip Op 30814CU), *2 (2015) (prior order).

. As noted, $5,870 appears to be exempt as a rollover, but this shall not insulate it from review by the hearing court.